## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NORMANDA HOLMES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PROGRESSIVE UNIVERSAL INSURANCE COMPANY, an Ohio corporation, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff Normanda Holmes ("Plaintiff"), by and through undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against Progressive Universal Insurance Company ("Progressive" or "Defendant") and allege as follows:

### INTRODUCTION

1. This is a class action on behalf of Plaintiff and all other similarly situated claimants in Illinois who received a payment for the loss of a totaled vehicle from Defendant, where Defendant used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value of the loss vehicles. By using these valuation reports, Defendant systemically thumbs the scale when calculating the actual cash value ("ACV") of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) deceptive and unexplained; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendant's vendor Mitchell; and (e) on information and belief, not applied by Defendant and Mitchell to insureds in other states like California.

1

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the actual cash value ("ACV") of the vehicle. Attached as Exhibit A is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy for all members of the putative Class.

3.      When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Progressive, to undervalue and underpay the claims by manipulating the data used to determine the actual cash value of the vehicles. Specifically, under their insurance policy terms and applicable Illinois law, Defendant has a duty to pay, and represent that they will pay, the actual cash value of a loss vehicle when adjusting total loss claims. Notwithstanding these obligations and representations, Defendant fails to fulfill this obligation by using a valuation process that employs improper and unreasonable adjustments to reduce the value of comparable vehicles specified in the valuation reports, which in turn reduces the valuation of the total loss vehicles and the claim payment to the insured/claimant.

4.      Specifically, Defendant, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the actual cash value of Plaintiff's and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 8.

5.     An integral part of Defendant's fraudulent scheme is a provision of the Policy which requires the parties to submit to an appraisal of the loss if there is a disagreement over the loss. The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser, and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that the insureds will forego the appraisal process and accept the artificially determined loss-payment for the total-loss claims. As designed by Defendant, the appraisal provision prevents plaintiff and the Class from effectively vindicating their rights under the Policy.

6.     To be clear, this case does not present a dispute about loss—which both Parties agree exceeds ACV, such that the vehicle is a total loss—or even ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policies, in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

7.     Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiff nor the members of the Class had any roll in drafting its terms.

8.     Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant violated consumer protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, breached its contracts and the covenant of good faith and fair dealing with its insureds, and was unjustly enriched.

3

9. As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff did not receive the benefit of her bargain, and thus sustained actual damages.

10. By this action, Plaintiff, individually and on behalf of the Class, seek damages and injunctive and declaratory relief.

## PARTIES

11. Plaintiff Normanda Holmes, at all relevant times, was an Illinois citizen. At all relevant times, Plaintiff was contracted with Progressive for automobile insurance. On or about September 4, 2020, Plaintiff was in a car wreck and Defendant deemed her vehicle to be a total loss.

12. Defendant Progressive Universal Insurance Company is an Ohio company with its principal place of business in Ohio. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensivecoverage.

## JURISDICTION AND VENUE

13. Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed class members are citizens of the State of Illinois. Defendant is an Ohio Corporation that has its corporate headquarters in Ohio, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Illinois.

14. Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustment that were deceptively deducted), claimed by Plaintiff and the Class are estimated in good faith to exceed $5,000,000.00.

15. Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts

business in this District.

## FACTUAL ALLEGATIONS

16.     On September 4, 2020, Plaintiff was involved in a car wreck and sustained physical damage to her vehicle.

17.     Like all members of the putative Class, Plaintiff made a property damage claim to Defendant.

18.     Pursuant to the same policies and procedures, Defendant declared Plaintiff's vehicle to be a total loss and purported to offer her the actual cash value of her loss vehicles, as Defendant promised and represented it would under the uniform provisions of its insurance policies and Illinois law.

19.     When calculating their valuations and claims payments, Defendant systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action, regardless whether it involves first-party or third-party claimants or which Progressive Group entities were directly involved in the issuance of the relevant policy. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the policy. Defendant provided a Mitchell Vehicle Valuation Report for Plaintiff on September 15, 2020. *See* Exhibit B.

20.     The Mitchell Vehicle Valuation Reports used by Defendant during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report

5

then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit B at p. 8.

21.     In addition, however, the valuation reports used by Defendant make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff, Projected Sold Adjustments in the amounts of -$818.00, -$695.00, and -$712.00, respectively, were applied to each of the three comparable vehicles. Exhibit B at pp. 6-7.

22.     Defendant provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiff's valuation report. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 8.

23.     Defendant's Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Defendant does not do what it says it will do – pay actual cash value. Moreover, as described above, Defendant provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." Exhibit B at p. 8.

24.     In truth, Defendant's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to reflect the intense competition in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore is not proper to include in determining actual cash value. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total

loss of their vehicle and need to procure a replacement and have limited time to search out the illusory opportunity to obtain the below-market deal Defendant assumes always exists without any explanation or support.

25.     Defendant's Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining actual cash value, including use of comparable vehicles. Defendant begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales in favor of Progressive. Defendant documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and make dollar adjustments accordingly. Plaintiff does not challenge these documented adjustments. At this stage of the process, Defendant abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining actual cash value. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

26.     The impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

27.     On information and belief, the impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Progressive Group entities do not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in Illinois while not subjecting California claimants to the same negative adjustments.

28.     Plaintiff and each member of the class were damaged by Defendant's application of these Projected Sold Adjustments because they were not paid the actual cash value they would have received had Defendant applied proper methodologies and appraisal standards.

29.     Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendant for actual cash value.  Specifically, for Plaintiff, were it not for this deceptive and improper adjustment, the payment of actual cash value by Defendant would have been $445.00 higher,[1] before adding the related increase in payments for applicable sales taxes.

**Defendant's Deceptive and Unfair Appraisal Process**

30.     An integral part of Defendant's fraudulent scheme is a provision of Policy which requires the parties to submit to an appraisal if there is a disagreement over the amount of loss. The appraisal provision requires the insured and the insurer to hire, at their own expense, an appraiser and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which theinsureds' total-loss claims are underpaid is likely less than the cost of the appraisal, Defendant knows that the insureds will almost certainly forego the appraisal process and accept the artificially reduced ACVof the vehicle for their total-loss claims. As designed, the appraisal clause prevents plaintiff and the Class from effectively vindicating their statutory and common law causes of action.

31.     To be clear, this case does not present a dispute about the amount of loss. Plaintiff does not contest Defendant's determination of the amount of loss, nor that the amount of loss exceeded the vehicle's ACV, such that the vehicle was determined by Defendant to be a total loss, i.e., totaled (uneconomical to repair). Rather, this case challenges Defendant's fraudulent scheme

---

[1] $445.00 is the average of the Projected Sold Adjustments applied to three of the five comparable vehicles in Plaintiff's valuation report.

to illegally undervalue insureds' vehicles that are declared a total loss, in order to increase its own profits. This is an issuethat cannot be resolved through an appraisal process that is part of that very scheme.

32. Importantly, Plaintiff does not contest the ***amount*** of the Projected Sold Adjustment. Said another way, it is not that Defendant believes the Policy and Illinois law allow for a 6% Projected Sold Adjustment, while Plaintiff believes only a 3% adjustment is permitted. Rather, Plaintiff alleges that ***no Projected Sold Adjustment is permitted at all*** as a matter of law. This question cannot be determined through appraisal.

33. In sum, there is no dispute over the amount of loss. The dispute is over the vehicle's ACV.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Illinois citizens insured by Defendant who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

35. Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members.

36. Plaintiff reserves her right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses, or modified in any other way.

37. **Numerosity.** The members of the Class are so numerous that individual joinder of

all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of Class members, the precise number is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

38. **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether Defendant systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine actual cash value;

b. Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendant for the actual cash value of Plaintiff's and Class members' total loss vehicles;

c. Whether representing to claimants that the Mitchell valuation equated with the total loss vehicle's actual cash value was deceptive;

d. Whether Defendant's deceptive acts and improper practices injured Plaintiff and members of the Class;

e. Whether Defendant's acts violated their obligations under the policy of insurance;

f. Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the calculation of damages; and

g. Whether Plaintiff and members of the Class are entitled to an injunction restraining Progressive's future deceptive acts and practices.

39. **Typicality.** The claims of the Plaintiff, who is the representative of the Class herein,

are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiff, depend on a showing of the acts of Progressive giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

40. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

41. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT 1**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS, 505/1, *et seq.***

42.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

43.     This Count is brought by Plaintiff individually and on behalf of the Class.

44.     Defendant, Plaintiff, and the Class members are "persons" within the meaning of 815 ILCS 505/l(c).

45.     Plaintiff and the Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

46.     Defendant was and is engaged in "trade" or "commerce" within the meaning of 815 ILCS 505/1(f).

47.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

48.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's ACV payment to insureds, as detailed above, in its Policy or otherwise until after the adjustments were made as part of the total-loss claim process.

49.     Moreover, Defendant knowingly and intentionally represented that the specific car dealers were "likely" to sell the vehicles for significantly less than the online listed price, despite (i) never having spoken with or discussed such issue with any of the represented car dealers and

(ii) knowing that it was exceedingly *unlikely* that the vehicles would be sold for less than the online listed price and, indeed, more likely that the vehicles would be sold for *more* than the online listed price.

50.    Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at last 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

51.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles, and its failure to comply with Illinois law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Illinois CFA.

52.    Defendant's misrepresentations and omissions regarding their application of an arbitrary Projected Sold Adjustment to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

53.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles inorder to reduce the amount of Defendant's total-loss payments to its insureds.

54.    The facts regarding Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable

consumer, and they were, in fact, material to Plaintiff and the Class members.

55.     Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

56.     Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the Illinois CFA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary Projected Sold Adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

57.     Plaintiff and the Class members were aggrieved by Defendant's violations of the Illinois CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles, including that the Projected Sold Adjustment is arbitrarily selected and applied, in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

58.     Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payment to insureds.

59.    Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant or would not paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

60.    Defendant's violations of the Illinois CFA present a continuing risk of future harm to Plaintiff and the Class members.

61.    Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Illinois CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

## COUNT 2

## BREACH OF CONTRACT

62.    Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

63.    This Count is brought by Plaintiff individually and on behalf of the Class.

64.    Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

65.    Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

66.    Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

67.    Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious Projected Sold Adjustment to

comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

68.     Defendant also failed to comply with Illinois law, incorporated into the Policy, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at least 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

69.      Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

70.     As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 3

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

71.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

72.     This Count is brought by Plaintiff individually and on behalf of the Class.

73.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

74.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one

of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

75.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

76.     Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at last 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

77.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

   a.  Intentionally applying Projected Sold Adjustment to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

   b.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

   c.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable

78.     Defendant's breaches of the covenant of good faith and fair dealing have caused

damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a Projected Sold Adjustment.

## COUNT 4

## UNJUST ENRICHMENT

79.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

80.     This Count is brought by Plaintiff individually and on behalf of the Class.

81.     Plaintiff pleads this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

82.     Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

83.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce their ACV payment to insureds.

84.     Defendant also failed to comply with Illinois law, which requires insurance companies who use an "electronically computerized service" to determine the retail "market value" of a totaled vehicle to "include at last 2 currently available vehicles from licensed dealers in Illinois or 2 vehicles that have been sold by licensed dealers in Illinois…" Illinois Administrative Code Section 919.80(c)(2).

85.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its promise to pay ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to

artificially reduce its total-loss payments to insureds and its failure to comply with Illinois law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

86.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

87.     Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## COUNT 5

## DECLARATORY JUDGMENT

88.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

89.     This Count is brought by Plaintiff individually and on behalf of the Class.

90.     A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

91.     Plaintiff, individually and on behalf of the Class, seek a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary Projected Sold Adjustment that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

92.     Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express

terms of their contracts of insurance with Plaintiff and members of the Class.

93.     As a result of these breaches of contract, Plaintiff and the Class members have been injured.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the Class as follows:

A.  An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B.  An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C.  Disgorgement of Defendant's profits;

D.  Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant's described herein;

E.  An award Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees as provided by law; and

F.  An award such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

Dated: February 18, 2022                          Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

Scott Edelsberg, Esq.*
Christopher Gold, Esq.*
**EDELSBERG LAW, PA**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone:  305-975-3320
scott@edelsberglaw.com
chris@edelsberglaw.com

*Pro Hac Vice to be filed*

**Counsel for Plaintiff and the Proposed Class**