UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NORMANDA HOLMES and NEIL YOUNG,     )
*Individually and on behalf of others similarly*     )
*situated,*     )
     )
                    Plaintiffs,     )
     )          No. 22 C 894
          v.     )
     )          Judge Sara L. Ellis
PROGRESSIVE UNIVERSAL INSURANCE     )
COMPANY and PROGRESSIVE     )
NORTHERN INSURANCE COMPANY,     )
     )
                    Defendants.     )

## OPINION AND ORDER

In the Fall of 2020, car accidents caused physical damage to Plaintiffs Normanda

Holmes' and Neil Young's vehicles.  Plaintiffs filed claims with their respective insurers,

Defendants Progressive Universal Insurance Company and Progressive Northern Insurance

Company (collectively, "Progressive"), who declared their vehicles to be total losses.

Progressive thereafter purported to pay Plaintiffs the Actual Cash Value ("ACV") of their

vehicles, but Plaintiffs allege that Progressive undervalued their vehicles.  In their amended

complaint, Plaintiffs assert, on behalf of themselves and others similarly situated, claims for

violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count

I), breach of contract (Count II), breach of the covenant of good faith and fair dealing (Count

III), and declaratory relief (Count V).[1]  Progressive now moves to dismiss Plaintiffs' amended

complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs have sufficiently

alleged a deceptive conduct claim under ICFA with respect to their allegation that Progressive

---

[1] Plaintiffs' amended complaint also asserts a claim for unjust enrichment, but Plaintiffs withdrew that claim in response to Progressive's motion to dismiss.

failed to disclose material facts about its application of a Projected Sold Adjustment ("PSA"). However, Plaintiffs have not sufficiently alleged an ICFA unfair practices claim, and so the Court dismisses the unfair practices claim without prejudice. Plaintiffs have also sufficiently alleged a plausible claim for breach of contract and breach of the duty of good faith and fair dealing. But because Plaintiffs lack standing to seek declaratory relief, the Court dismisses that claim without prejudice.

## BACKGROUND[2]

In September and November of 2020, Plaintiffs sustained physical damage to their vehicles after being involved in car accidents. At the time of the accidents, Plaintiffs had an insurance policy (the "Policy") with Progressive. The Policy provides that Progressive will pay for "sudden, direct[,] and accidental loss" to insured vehicles by providing "the lowest of: the actual cash value" of the damaged property, the amount necessary to replace or repair the damaged property, or the amount stated in the Policy's declaration page. Doc. 23-1 at 20, 24. Progressive declared Plaintiffs' vehicles to be total losses (*i.e.*, repair of the vehicle would be impossible or uneconomical), and so purported to pay the ACV of the vehicles.

The Policy provides that Progressive determines the ACV based on "the market value, age, and condition of the vehicle" at the time of loss, that Progressive "may use estimating, appraisal, or injury evaluation systems to assist . . . in adjusting claims under this [P]olicy," and that those systems "may be developed by [Progressive] or a third party and may include computer software, databases, and specialized technology." *Id.* at 25–26. As contemplated by the Policy, Progressive relies on valuation reports prepared by third-party Mitchell International, Inc. ("Mitchell") to calculate the ACV of total-loss vehicles. Mitchell locates comparable

[2] The Court takes the facts in the background section from Plaintiffs' amended complaint and accompanying exhibits and presumes them to be true for the purpose of resolving Progressive's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

vehicles sold or for sale in an insurance claimant's geographic area and then adjusts the prices for these comparable cars (*e.g.*, for differences in mileage, options, and equipment).  For comparable vehicles that are listed but have not yet sold, Mitchell systematically applies a PSA, which purports to "reflect consumer purchasing behavior (negotiating a different price than the listed [vehicle] price)," Doc. 23-2 at 8, and results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV of Plaintiffs' total loss vehicles.

Mitchell applied PSAs in the amounts of -$818.00, -$695.00, and -$712.00 to vehicles comparable to Holmes' total-loss vehicle, and -$419.00, -$396.00, -$567.00, and -$492.00 to vehicles comparable to Young's total-loss vehicle.  Neither Progressive nor Mitchell has conducted research to determine whether this "consumer purchasing behavior" (negotiating a different price than the listed price) exists or whether it impacts ACV in today's used-car market, and Progressive has disregarded data that contradicts the propriety of applying a PSA.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).  To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014).  A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. ICFA

Plaintiffs bring claims of deception and unfair conduct under ICFA, "a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegal v. GEICO Cas. Co.*, 523 F. Supp. 3d 1032, 1041 (N.D. Ill. 2021) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019)), *motion to certify appeal denied*, No. 1:20-CV-04306, 2021 WL 2413155 (N.D. Ill. June 14, 2021). To state an ICFA claim, Plaintiffs must allege (1) a deceptive or unfair act or practice by Progressive, (2) Progressive's intent that Plaintiffs rely on the deceptive or unfair practice, (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce, and (4) Progressive's unfair or deceptive practice proximately caused Plaintiffs actual damage.[3] *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). A deceptive practices claim must meet Rule 9(b)'s heightened pleading standard, while an unfair practices claim need not because it is not based on fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Plaintiffs may recover for either deceptive or unfair conduct, *see Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (2002); here, they attempt to proceed with both claims.

---

[3] Unlike for common law fraud, reliance is not an element of an ICFA claim. *See, e.g.*, *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576–77 (7th Cir. 2001) (although common law fraud claim was barred because plaintiff could not show it relied on oral representations different from contract terms, ICFA claim could proceed past motion to dismiss based on the same facts because reliance is not a required element of an ICFA claim).

With respect to unfair conduct, with the possible exception of Plaintiffs' allegation that Progressive violated Illinois law, Plaintiffs have not asserted an unfair practices claim. They base the allegations in their amended complaint on allegedly deceptive conduct, not on conduct that violates public policy, is "so oppressive that the consumer has little choice but to submit," or causes consumers substantial injury—the considerations for unfairness under ICFA. *See, e.g.*, Doc. 23 ¶ 74 ("By knowingly and intentionally *misrepresenting, omitting, concealing, and failing to disclose material facts* . . ., Defendants engaged in one or more unfair or deceptive business practices." (emphasis added)); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Their inclusion of "unfairness" language in the amended complaint does not transform the nature of their claim. *See Camasta*, 761 F.3d at 737 (where plaintiff claimed he was induced to purchase products from defendants based on practices that "mislead," "misrepresent," and "defraud," adding "language of unfairness" instead of "misrepresentation" did not change the fact that plaintiff premised his allegations on fraudulent conduct); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (lower court appropriately interpreted allegations as deceptive practices claim where they were "predicated on either a misrepresentation or an omission"). However, because Plaintiffs arguably assert an unfair practices claim resulting from Progressive's alleged violation of Illinois law, the Court will consider whether they sufficiently pleaded the claim *infra*.

With respect to deception, Plaintiffs argue that Progressive engaged in four deceptive acts in violation of ICFA: (1) "misrepresenting to insureds that Defendants will pay ACV"; (2) "concealing known facts regarding their application of an arbitrary PSA to comparable vehicles to reduce their market value and the resulting ACV payments to insureds"; (3) "misrepresenting the PSA as a 'reflect[ion] of consumer purchasing behavior' and that

5

specific cars were likely to sell for significantly less than their online list price" despite no factual support; and (4) "failing to comply with Illinois law in calculating the market value of totaled vehicles." Doc. 44 at 12. Progressive contends that the first and fourth alleged acts merely mimic Plaintiffs' breach of contract claim, and thus fall outside the scope of ICFA, and that Plaintiffs fail to state the second and third alleged acts with the requisite particularity. With respect to all of the alleged deceptive acts, Progressive argues that Plaintiffs failed to establish that Progressive's deception proximately caused Plaintiffs' purported damage. The Court addresses each act below.

### A.      Misrepresentation That Progressive Would Pay ACV

Progressive's first allegedly deceptive act—"misrepresenting to insureds that Defendants will pay ACV," Doc. 44 at 12 (citing Doc. 23 ¶ 29)—is Plaintiffs' "breach-of-contract allegation dressed up in the language of fraud." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). Under Illinois law, "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169 (2005); *see also Greenberger*, 631 F.3d at 395 ("[F]raud claims must contain something more than reformulated allegations of a contractual breach. . . . [B]reach-of-contract allegations dressed up in the language of fraud . . . . cannot support statutory or common-law fraud claims."). "When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices *distinct* from any underlying breach of contract." *Greenberger*, 631 F.3d at 399 (emphasis added); *see also Propitious, LLC v. Badger Mut. Ins. Co.*, No. 18 CV 1405, 2019 WL 480008, at *5 (N.D. Ill. Feb. 7, 2019) ("[W]hen breach of contract and Consumer Fraud Act counts rely on the same facts, it is clear that the consumer fraud claim is merely a breach of contract count clothed as a violation of the

Consumer Fraud Act." (quoting *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 704 (2005))).

Plaintiffs have failed to sufficiently distinguish their ICFA claim relating to misrepresentation of ACV from their breach of contract claim. Plaintiffs allege that "[a]s part of a deceptive practice to lower the value of property claims, Defendants do not do what they say they will do—pay ACV." Doc. 23 ¶ 29. But the fact that Progressive "promised [to do] something and then failed to do it" does not provide grounds for an IFCA claim. *Greenberger*, 631 F.3d at 399 (quoting *Avery*, 216 Ill. 2d at 169). Plaintiffs' alleged deceptive practice is not "distinct from" their breach of contract claim. *See, e.g.*, Doc. 23 ¶ 89–90 ("Pursuant to the [Policy], upon the total loss of their insured vehicles, Defendants purported to pay Plaintiffs . . . the ACV of their totaled vehicles. Defendants, however, failed to pay the ACV of Plaintiffs' . . . vehicles[.]"); *Greenberger*, 631 F.3d at 399 (affirming dismissal of consumer fraud claim as duplicative of breach of contract claim where plaintiff alleged that defendant "falsely promis[ed] to restore its insureds' vehicles to their preloss condition and fail[ed] to disclose to policyholders that it would not keep this promise" as a result of defendant's "damage-estimating software, which systematically omit[ted] or underestimates the cost of repairs"); *cf. Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, No. 17 C 6285, 2019 WL 3037075, at *5 (N.D. Ill. July 11, 2019) (denying defendant's summary judgment request where defendant's alleged misrepresentations "extend[ed] beyond an unfulfilled promise to perform its contractual obligation"); *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 800 (2006) (finding "no evidence that [plaintiffs' claims] are based on a simple breach of warranty or breach of contract" where plaintiffs alleged that defendant withheld material facts that its windows would allow water to enter and cause wood

rot and deterioration).  Therefore, as pleaded, Plaintiffs may not proceed with their ICFA claim

on the basis that Progressive misrepresented that they would pay ACV.

### B.    Progressive's Failure to Disclose Material Facts Regarding its Application of a PSA

Plaintiff next alleges that Progressive failed to "disclose material facts regarding its

application of an arbitrary [PSA] to comparable vehicles in order to reduce their market value

and, as a result, the amount of Defendants' ACV payment to insureds . . . in its Policy or

otherwise until after the adjustments were made as part of the total-loss claim process."  Doc. 23

¶ 71.  Progressive contends that Plaintiffs' theory fails to meet Rule 9(b)'s pleading standard;

specifically, Progressive faults Plaintiffs for purportedly failing to identify a document that

contained an omission, which facts Progressive omitted, who concealed those facts, and why the

allegedly omitted facts were material—all elements a plaintiff must allege to sufficiently plead a

deceptive act under ICFA.  *See Coss v. Playtex Prod.*, No. 08 C 50222, 2009 WL 2245657, at *2

(N.D. Ill. July 10, 2009) ("To sufficiently plead a deceptive act under the ICFA, the plaintiff

must plead the who, what, when, and where of the fraud sufficient to reasonably notify the

defendant of its purported role in the scheme." (citation omitted) (internal quotation marks

omitted)).

Plaintiffs have sufficiently pleaded a deceptive act.  First, Plaintiffs allege that both the

Policy and the vehicle valuation that Mitchell provided to Progressive contained omissions and

the amended complaint makes clear the nature of those alleged omissions.  *See, e.g.*, Doc. 23

¶ 71 (Progressive failed to "disclose material facts regarding its application of an arbitrary

[PSA] . . . in its Policy"); *id.* ¶ 28 ("Defendants provide[] no data specific to the comparable

vehicles or any explanation of industry practices in its valuation reports to support any Projected

Sold Adjustment, much less the specific downward adjustments used in Plaintiffs' valuation

reports.").  Plaintiffs' identification of who allegedly concealed those facts—Progressive—is also sufficient.  *See Ridings v. Am. Fam. Ins. Co.*, No. 20 CV 5715, 2021 WL 722856, at *3 (N.D. Ill. Feb. 24, 2021) (rejecting defendant's argument that plaintiff didn't satisfy Rule 9(b) when she identified "the content . . . , who made the representation (American Family [the company]), the time . . . , and the place and method of communication (via a statement on its website).").  Finally, Plaintiffs sufficiently allege materiality.  "A material fact is one which would have caused the buyer to act differently, or is the type of information the buyer would expect to rely on when making a purchase." *Coss*, 2009 WL 2245657, at *2 (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 505 (1996)).  Plaintiffs allege that they purchased Progressive insurance "in reliance on Defendants' misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its promise to pay ACV in the event of a total loss and Defendants' application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payment to insureds," Doc. 23 ¶ 81, and that but for Progressive's omissions and misrepresentations, "Plaintiffs . . . would not have purchased insurance coverage from Defendants or would not have paid as much for it," *id.* ¶ 82.  These allegations suffice.[4] *See Connick*, 675 N.E.2d at 595 (plaintiffs adequately pleaded consumer fraud violation based on a material omission where they alleged "that the safety problems of the Samurai were a material fact in that they would not have purchased the vehicles if Suzuki had disclosed the Samurai's safety risk."); *Perona v. Volkswagen of Am., Inc.*, 292 Ill. App. 3d 59, 69 (1997) (plaintiffs

---

[4] Both parties discuss Progressive's eventual disclosure of a PSA in the valuation reports it provided to Plaintiffs.  However, it is not clear to the Court why that affects Plaintiffs' claims regarding Progressive's omissions or misrepresentations related to the Policy—when Plaintiffs obtained the Policy, as they allege, they did not know about Progressive's application of a PSA to comparable vehicles.  *See* Doc. 23 ¶ 71 (Progressive failed to "disclose material facts regarding its application of an arbitrary [PSA] to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendants' ACV payment to insureds . . . in its Policy or otherwise until after the adjustments were made as part of the total-loss claim process").

adequately pleaded consumer fraud violation based on a material omission where they alleged that they would not have purchased their vehicles if Audi previously disclosed specific safety risks); *cf. Siegal*, 523 F. Supp. 3d at 1042–43 (plaintiff did not allege deception with sufficient particularity where she did not allege facts to show that she considered defendant's allegedly deceptive claim when deciding whether to purchase insurance or that she would have acted differently had she known about defendant's omission).

Progressive also argues that Plaintiffs fail to sufficiently allege intent, proximate causation, and damages. With respect to intent, although Progressive is correct that misrepresentations or omissions are actionable only where a plaintiff can show culpability, *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 822–23 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017), the "ICFA intent requirement is merely the defendant's intent that the plaintiff in the action rely on the . . . information the defendant gave to plaintiff as opposed to any intent to deceive," *Siegal*, 523 F. Supp. 3d at 1043 (quoting *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 655 (2001)) (internal quotation marks omitted). Moreover, a "plaintiff may generally plead . . . intent." *Coss*, 2009 WL 2245657, at *2. Here, Plaintiffs allege that Progressive "knowingly and intentionally" failed to disclose material facts regarding its application of the PSAs in order to reduce the amount they would pay to insureds. Doc. 23 ¶ 71. Although Plaintiffs might not ultimately be able to prove that Progressive intended that they rely on Progressive's deception, at this stage, Plaintiffs' allegations are sufficient. *See Ciszewski v. Denny's Corp.*, No. 09C5355, 2010 WL 1418582, at *2 (N.D. Ill. Apr. 7, 2010) (explaining that intent "may be alleged generally" and finding that plaintiff's allegation that defendant "knew the sodium content of its meals and knowingly hid it from consumers, understanding that it would influence their decision to purchase its meals" sufficient to survive defendant's motion to

dismiss); *cf. Hart*, 191 F. Supp. 3d at 822 (finding that plaintiff did not sufficiently allege defendant's culpability because he did not allege "that Amazon knew that its statement was false").

Similarly, Plaintiffs have sufficiently alleged proximate cause and actual damages. "A plaintiff properly alleges actual loss when she asserts with particularity that the seller's deception deprived her of the benefit of her bargain by causing her to pay more than the actual value of the property." *Siegal*, 523 F. Supp. 3d at 1043 (citation omitted) (internal quotation marks omitted). Plaintiffs allege that but-for Progressive's omissions and misrepresentations, including its failure to disclose its application of PSAs, Doc. 23 ¶ 81, they "would not have purchased insurance coverage from Defendants or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss." *Id.* ¶ 82. Although these allegations are relatively bare-bones, they suffice at this stage to plausibly suggest damages and proximate cause. *See Siegal*, 523 F. Supp. 3d at 1043 (finding plaintiff's allegation that defendant's deceptive statement "induced her to renew her policy" which she claimed was "worth less than she paid for" sufficient); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013) (finding plaintiff's allegation that he was deprived of the benefit of the bargain because the product was worth less than it would have been worth absent deception or misrepresentation sufficient); *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911–12 (N.D. Ill. 2011) (plaintiffs adequately pleaded actual damages by alleging they would not have purchased the product or paid the same price for the product but-for defendant's deception). The Court therefore allows Plaintiffs to proceed with their ICFA claim based on Progressive's failure to disclose material facts regarding its application of a PSA.

### C. Progressive's Misrepresentation of the PSA

Plaintiffs also allege that Progressive engaged in a deceptive act by misrepresenting the PSA. Although Progressive raises numerous challenges to this claim, the Court need only address one: whether Plaintiffs have properly alleged that Progressive's conduct proximately caused their damages. "The key to an ICFA proximate cause allegation is timing: 'plaintiffs can state a valid claim of consumer fraud only where premised upon statements made prior to their dates of purchase,' and where no intervening cause broke that causal chain." *Siegal*, 523 F. Supp. 3d at 1044 (quoting *Miller*, 326 Ill. App. 3d at 656). Here, Progressive's misrepresentations regarding the PSAs could not have proximately caused Plaintiffs' damage because Progressive made the statements in connection with settling Plaintiffs' claims—after they purchased their coverage. *See Connick*, 174 Ill. 2d at 502 (lower court properly dismissed claims of consumer fraud based on statements made after the date of purchase). Plaintiffs have not sufficiently alleged that Progressive's misrepresentations caused their damage (*i.e.*, purchasing an insurance policy that they would not have otherwise purchased, or would have purchased for less money). *See Weis v. State Farm Mut. Auto. Ins. Co.*, 333 Ill. App. 3d 402, 409 (2002) ("The plaintiff's pecuniary loss must have resulted from the misrepresentations of which she complains."). Therefore, as pleaded, Plaintiffs may not proceed with their ICFA claim on the basis that Progressive misrepresented the PSA.

### D. Progressive's Failure to Comply with Illinois Law

Throughout their complaint, Plaintiffs allege that Progressive violated Illinois law. In their response, they contend that this "fail[ure] to comply with Illinois law in calculating the 'market value' of totaled vehicles" constitutes a "deceptive" act that Plaintiffs "clearly pled" in their amended complaint. Doc. 44 at 12 (citing Doc. 23 ¶ 73). Not so. Plaintiffs' amended

complaint does not allege with any particularity that Progressive engaged in a deceptive act by failing to comply with Illinois law. *See, e.g.*, Doc. 23 ¶ 73 (stating that Progressive failed to comply with Illinois Administrative Code Section 919.80(c)(2) and describing the law; *id.* ¶ 74 ("By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an [a PSA] . . . and its failure to comply with Illinois law, Defendants engaged in one or more unfair or deceptive business practices[.]"); *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at \*5 (N.D. Ill. Dec. 15, 2015) ("Conclusory allegations unsupported by specific facts are insufficient [to state a claim under ICFA.]").

If anything, as mentioned *supra*, the Court could understand Plaintiffs' pleadings regarding Illinois law to relate to unfair conduct, which a plaintiff need not plead with particularity under ICFA. *Camasta*, 761 F.3d at 737. A plaintiff may state an unfair practice claim by "showing that a challenged practice offends public policy." *Clayborn v. Walter Inv. Mgmt. Corp*, No. 18-CV-3452, 2019 WL 1044331, at \*6 (N.D. Ill. Mar. 5, 2019) (citation omitted) (internal quotation marks omitted). "While this standard is amorphous, courts have explicitly held that a plaintiff may predicate an ICFA unfairness claim on violations of other statutes or regulations . . . that do not themselves allow for private right of action." *Id.* (collecting cases). Thus, Plaintiffs may predicate their unfair conduct claim on Progressive's purported violation of Illinois Administrative Code Title 50, § 919.80(c) (the "Total-Loss Regulation"). But to do so, Plaintiffs would need to adequately plead that Progressive violated the regulation. *See Clayborn*, 2019 WL 1044331, at \*6 ("The question is whether Plaintiff has adequately pled that Defendants violated the [laws] and specifically whether Plaintiff has alleged conduct that amounts to an unfair business practice."). They have not. They merely allege in

conclusory fashion that Progressive "failed to comply with Illinois law" and quote the law. *See* Doc. 23 ¶¶ 73, 91, 99, 107. Even under notice-pleading requirements, these allegations do not suffice. *See Clayborn*, 2019 WL 1044331, at *4 ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" (quoting *Iqbal*, 556 U.S. at 678)). The Court therefore dismisses Plaintiffs' ICFA claim based on allegedly unfair practices without prejudice.

## II.     Breach of Contract

To state a claim for breach of contract under Illinois law, which both parties cite, a plaintiff must allege (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages suffered as a result. *Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 600 (7th Cir. 2014). Plaintiffs allege that Progressive breached its Policy by applying a PSA downward adjustment to the value of comparable vehicles, resulting in a lower ACV than Plaintiffs should have obtained. Progressive argues that Plaintiffs have not stated a claim because they fail to allege (1) any specific Policy provision Progressive allegedly breached and (2) the ACV of their total-loss vehicles, the amount necessary to replace their total-loss vehicles, the stated amount on the declarations page of their Policy, or how much Progressive paid to settle their claims.[5]

---

[5] Progressive contends that Plaintiffs impermissibly seek to allege a violation of the Total-Loss Regulation. Although Plaintiffs mention the Total-Loss Regulation in their amended complaint and address Progressive's arguments in their response, Plaintiffs do not bring an independent claim for violation of the Total-Loss Regulation. And the Court does not understand Plaintiffs' amended complaint to predicate their breach of contract claim on a violation of the Total-Loss Regulation. In their response, Plaintiffs speak hypothetically about whether or not they could permissibly base a breach of contract claim on the Total-Loss Regulation, but the Court does not rule on hypotheticals. For now, the Court understands Plaintiffs' breach of contract claim to arise independently from any purported violation of the Total-Loss Regulation. Should Plaintiffs ultimately seek to predicate their breach of contract claim in part on a violation of the Total-Loss Regulation, the Court will not preclude Progressive from challenging the claim.

The Court disagrees. Plaintiffs allege that Progressive breached the Policy provision requiring it to pay the limit of liability, which for Plaintiffs' vehicles amounted to the "actual cash value of the . . . damaged property at the time of the loss reduced by the applicable deductible." Doc. 23-1 at 24; *see also* Doc. 23 ¶ 2 ("In the event of a total loss to an insured vehicle . . . Defendants' uniform insurance policies with Plaintiffs . . . promise[ ] to pay for the loss, limited to the ACV of the vehicle."); *id.* ¶ 4 ("Notwithstanding these obligations and representations, Defendants fail to fulfill their obligations by taking advantage of a valuation process that employs improper adjustments to reduce the value of comparable vehicles specified in the valuation reports, in turn reducing the valuation of the total loss vehicles and the corresponding claim payment to the insured[.]"). Plaintiffs further allege that, by applying downward PSAs to the price of comparable vehicles—reductions that "do not reflect market realities . . . and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of Internet pricing and comparison shopping," Doc. 23 ¶ 30—Progressive did not pay Plaintiffs ACV in breach of the Policy. *See id.* ¶¶ 55–56, 90. As multiple courts considering nearly identical facts have held, "[t]his is enough to allege that Progressive breached a Policy provision at the motion to dismiss state." *Schroeder v. Progressive Paloverde Ins. Co.*, No. 122CV00946JMSMPB, 2022 WL 17752171, at *5 (S.D. Ind. Dec. 19, 2022) (considering the same Policy provisions, a similar complaint, and collecting cases); *see also Smith v. S. Farm Bureau Cas. Ins. Co.*, 18 F.4th 976, 980–81 (8th Cir. 2021) (reversing district court's dismissal of breach of contract claim because if plaintiff's allegations regarding PSA deductions were true, including allegations that reductions did not reflect market realities and that dealers do not inflate prices because of the "intense competition in the context of internet pricing and comparison

shopping," then the defendant "did not consider the truck's fair market value; it considered an artificially lower value, in breach of its contractual duty"); *Watson v. Progressive Direct Ins. Co.*, No. CV 5:22-203-DCR, 2022 WL 18027628, at **7** (E.D. Ky. Dec. 30, 2022) (similar); *Volino v. Progressive Cas. Ins. Co.*, No. 21 Civ. 6243 (LGS), 2022 WL 5242894, at *2 (S.D.N.Y. Oct. 6, 2022) (denying Progressive's motion to dismiss plaintiffs' breach of contract claim where plaintiffs alleged "that the application of the PSA systematically breaches the contracts because the PSA do[es] not reflect market realities . . . and run[s] contrary to customary automobile dealer practices" and included "non-conclusory allegations to support the inference that the PSA is unsupported by current market data" (alterations in original) (internal quotation marks omitted)); *Hobson v. Hartford Ins. Co. of the Midwest*, No. 21CV20696(EP)(ESK), 2022 WL 4536470, at *5 (D.N.J. Sept. 28, 2022) ("If [plaintiff's] allegations that Hartford Insurance applied the PSA to the ACV calculus in this arbitrary manner are true, then Hartford Insurance did not pay the ACV of [plaintiff's vehicle].  Instead, Hartford Insurance paid an artificially lower value, in breach of its contractual duty.  Accordingly, [plaintiff] plausibly states a claim for breach of contract."); *Williams v. Progressive Direct Ins. Co.*, No. CV 22-510-MAK, 2022 WL 4482726, at *10 (D. Del. Sept. 27, 2022) (denying Progressive's motion to dismiss plaintiff's breach of contract claim and following other courts' reasoning that "the application of the [PSA] to reduce the value of comparable cars, which in turn reduces the base value used to calculate the market value of the total loss car[,] plausibly states a claim for breach of contract"); *Petri v. Drive N.J. Ins. Co.*, No. 1:21-CV-20510, 2022 WL 4483437, at *5 (D.N.J. Sept. 26, 2022) ("The analysis here is simple . . . . [Plaintiffs] allege throughout the Amended Complaint that Defendants were obligated under their policies to pay the ACV of their totaled vehicles but failed

to do so by applying the PSA—definitionally, a downward adjustment. These allegations are about as close to a contract law casebook's definition of breach as one could get.").

As to damages, contrary to Progressive's assertions, Plaintiffs need not allege the ACV of their total-loss vehicles, the amount necessary to replace their total-loss vehicles, the stated amount on the declarations page of their Policy, or how much Progressive paid to settle their claims. *See Watson*, 2022 WL 18027628, at *8 (rejecting Progressive's argument that plaintiff needed to "state how much her car was worth or how much she believed she was owed," instead holding that plaintiff "satisfied Rule 12(b)(6)'s pleading requirements by stating that she suffered $904.33 in damages: the amount by which Progressive reduced her settlement offer after applying the PSA"); *Volino*, 2022 WL 5242894, at *2 (rejecting Progressive's argument that plaintiffs failed to allege a breach because they did not allege "what the true actual cash value of [Plaintiffs'] vehicles should have been or the amount by which Defendants purportedly underpaid them" (internal quotation marks omitted)); *Williams*, 2022 WL 4482726, at *10 (rejecting Progressive's attempt to distinguish the Eighth Circuit's decision in *Smith* on the basis that the plaintiff in *Williams* failed to allege the value of their vehicle or the specific loss amount). Plaintiffs allege that "they were not paid the ACV they would have received had Defendants applied proper methodologies and appraisal standards." Doc. 23 ¶ 55. Specifically, after calculating the difference between the base value of comparable vehicles without applying the improper PSA and the base value as calculated by Mitchell, Plaintiffs allege that the ACVs for Holmes and Young would have been $445.00 and $374.80 higher, respectively. *Id.* ¶ 56 & n.2. At this stage, these allegations suffice. *See Schroeder*, 2022 WL 17752171, at *5 (explaining that the plaintiff's allegations "that the base values of the comparable vehicles would have been higher, which would have made the ACV of her vehicle higher, is enough" at the

motion to dismiss stage, even though it was not "entirely clear from [the plaintiff's] allegations exactly how she arrived at [her damages] figure"); *Petri*, 2022 WL 4483437, at *5 ("As for the damages element, although Plaintiffs' allegations perhaps could have been more precise, it seems sufficient at the motion to dismiss stage for Plaintiffs to allege, as they do, that the ACV for their vehicles was greater than the amount Defendants paid.").

Progressive's emphasis on the fact that Mitchell based its valuation report for Holmes' vehicle in part on a "sold price" vehicle (*i.e.*, one where Mitchell did not apply a PSA) fares no better. Progressive explains that the base value Mitchell assigned to Holmes' total-loss vehicle was actually higher than the "sold price" of a comparable vehicle (to which Mitchell did not apply a PSA). Therefore, Progressive contends, Plaintiffs cannot state a plausible claim because they cannot show a *loss*; if Progressive calculated the ACV based solely on sold vehicles—rather than applying the allegedly improper PSA—Plaintiffs would have received a lower value for their vehicles. Progressive's argument misses the mark. As a court considering a similar argument explained, that the "value of the sold cars is less than what Progressive [] paid [Plaintiffs] does not render [Plaintiffs'] otherwise plausible claim implausible." *Grady v. Progressive Direct Ins. Co.*, No. 22-cv-866, Doc. 51 at 15 (D. Minn. Nov. 30, 2020). Although it could have done so, Progressive did not value Plaintiffs' vehicles based solely on sold vehicles, instead including the value of, and applying a PSA to, listed vehicles. *See id*. Plaintiffs allege they would have been $445.00 and $374.80 better off, respectively, but-for the application of a PSA. While "[d]iscovery may reveal [those] number[s] to be inaccurate," *id.* (citing *Petri*, 2022 4483437, at *5), Plaintiffs have plausibly alleged an injury sufficient to survive Progressive's motion to dismiss. The Court denies Progressive's motion to dismiss Plaintiffs' breach of contract claim.

### III.    Breach of the Covenant of Good Faith and Fair Dealing

In addition to their breach of contract claim, Plaintiffs allege that Progressive breached the covenant of good faith and fair dealing.  Although not a standalone claim, the obligation of good faith and fair dealing exists in every contract in Illinois and guides the construction of explicit terms in an agreement.  *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992); *Anderson v. Burton Assocs., Ltd.*, 218 Ill. App. 3d 261, 267 (1991).  Violation of the duty may give rise to a breach of contract claim, as Plaintiffs claim here.  *See Ride Right, LLC v. Pace Suburban Bus*, No. 18-cv-01119, 2018 WL 6446410, at *5 (N.D. Ill. Dec. 10, 2018) (although the duty of good faith and fair dealing does not provide an independent cause of action, it may give rise to a breach of contract claim).  To allege a breach of the duty, Plaintiffs "must show that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008).

Plaintiffs allege that Progressive had discretion to perform its obligations under the Policy, including the obligation to determine the ACV of Plaintiffs' total-loss vehicles, but that it exercised that discretion "unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds."  Doc. 23 ¶ 98.  Plaintiffs further allege that Progressive exercised its discretion in bad faith by applying the PSA in contradiction to data and ignoring or excluding data that did not serve its interests. *See id.* ¶¶ 47–51.  Progressive moves to dismiss on the basis that Plaintiffs' claim fails with their breach of contract claim because the covenant does not provide an independent source of liability

and, even if it did, it impermissibly rests on a purported violation of the Total-Loss Regulation. In reply, Progressive further argues that Plaintiffs did not plead an "alternative" claim for breach of contract based on a breach of the implied covenant of good faith and fair dealing and have failed to show that Progressive is vested with discretion.[6] Doc. 48 at 9–10.

First, Plaintiffs have stated a claim for breach of contract, and so the Court rejects that basis for Progressive's motion. Second, Plaintiffs' claim for breach of the covenant of good faith and fair dealing permissibly sounds in contract; Plaintiffs do not attempt to bring an independent claim grounded in tort. *See* Doc. 44 at 10 ("Plaintiffs do not bring a cause of action under tort, but rather bring a theory of liability of breach of *contract*."); *McCleary v. Wells Fargo Secs., L.L.C.*, 2015 IL App (1st) 141287, ¶ 21 ("A plaintiff sustains a cause of action for breach of contract for abuse of discretion based on a violation of the implied covenant of good faith and fair dealing by alleging that defendant exercised its discretion in a manner contrary to the reasonable expectations of the parties." (citing *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 673–76 (7th Cir. 2013))). Third, as explained *supra* n.5, although Plaintiffs mention the Total-Loss Regulation in their amended complaint, they do not base their breach claim on a violation of that regulation, *see, e.g.*, Doc. 44 at 9–11 (no reference to the Total-Loss Regulation in Plaintiffs' response), and they allege facts that support their claim independent of any purported violation of the regulation, *see* Doc. 23 ¶ 100 (detailing ways in which Progressive breached the

---

[6] Because a breach of the covenant of good faith and fair dealing "does not provide an independent cause of action," *Ride Right, LLC*, 2018 WL 6446410, at *5 (citing *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002)), the Court construes this claim as part of Plaintiffs' breach of contract claim, *see id.* (construing breach of implied duty of good faith and fair dealing as a breach of contract claim (citing *Newman v. Spirit Airlines*, No. 12 C 2897, 2012 WL 3134422, at *2 (N.D. Ill. July 27, 2012))); *LSREF3 Sapphire Tr. 2014 v. Barkston Props., LLC*, No. 14 C 7968, 2016 WL 302150, at *2 (N.D. Ill. Jan. 25, 2016) (court "look[ed] beyond how the allegations [were] broken into separate counts that [were] captioned differently, which is of no significance for purposes of a motion to dismiss in federal court," where defendants "pleaded their breach of contract and breach of the implied covenant of good faith claims in separate counts").

covenant of good faith and fair dealing with no reference to the Total-Loss Regulation). Finally, contrary to Progressive's contention, Plaintiffs have alleged that Progressive has discretion in calculating the ACV of their total-loss vehicles. *See, e.g.*, Doc. 23 ¶ 98 ("Under the Policy, Defendants had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle."). Although Plaintiffs may not ultimately be able to prove their claim, Plaintiffs' allegations are sufficient to survive Progressive's motion. *See Williams*, 2022 WL 4482726, at *10 (allowing covenant of good faith and fair dealing claim to proceed where plaintiff alleged that "to the extent [Policy language] gives Progressive some discretion in calculating actual cash value[,] it exercised that discretion unreasonably and capriciously by applying the projected sold adjustment"); *Grady*, No. 22-cv-866, Doc. 51 at 16–17 (finding plaintiff's allegation that Progressive "exercised its discretion to calculate ACVs under the Policy unreasonably and with improper motive" to be "enough for pleading purposes").

## IV.     Declaratory Relief

Finally, Plaintiffs seek a declaration that "in paying total-loss claims by first-party insureds, it is a breach of Defendants' insurance contract, as well as a violation of law, for Defendants to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary [PSA] that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount." Doc. 23 ¶ 114. Progressive moves to dismiss on the bases that (1) Plaintiffs lack standing because they cannot establish a likelihood of future injury, and (2) even if they had standing, the Court should dismiss their claim as duplicative of their breach of contract claim.

Progressive is correct. A plaintiff must have standing to seek declaratory relief; to establish standing, a plaintiff must show that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Santiago v. City of Chicago*, 446 F. Supp. 3d 348, 364 (N.D. Ill. 2020) (citing *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) (internal quotation marks omitted). Although Plaintiffs allege that Progressive's practices regarding total-loss claims are "ongoing," Doc. 23 ¶ 115, and purport to seek "prospective" relief, Doc. 44 at 21, they have not demonstrated a substantial risk of harm in the future. *See Watson*, 2022 WL 18027628, at *11 ("Watson's claim fails because she has not pleaded a request for prospective relief. Instead, her claim involves a dispute over conduct that already occurred: namely, that Progressive breached the terms of her insurance contract when it calculated the ACV of her vehicle. She has not demonstrated that she is likely to suffer future harm from Progressive's actions; therefore, her claim for declaratory relief will be dismissed."); *Williams*, 2022 WL 4482726, at *11 (plaintiff lacked standing to seek declaratory relief because she challenged Progressive's past conduct—the application of the PSA to determine a vehicle's ACV).

Moreover, courts have discretion to decline to hear a claim for declaratory judgment, *see Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987), and federal "[c]ourts commonly exercise their discretion and dismiss declaratory judgment claims where they are duplicative of breach of contract claims," *Schroeder*, 2022 WL 17752171, at *8 (dismissing declaratory judgment claim as duplicative of breach of contract claim where plaintiff sought only a "declaration that Progressive's deduction of PSAs . . . result[ed] in a valuation of less than the ACV for insured vehicles, and that this practice constitutes a breach of the Policy"). As courts considering the *same declaratory relief* as that requested here have held, Plaintiffs'

claim is duplicative of their contract claim. *See, e.g.*, *Williams*, 2022 WL 4482726, at *11 (plaintiff's "claim for declaratory relief is duplicative of her contract claims as it relates to her adjusted claim and request for relief from conduct long over"); *Petri*, 2022 WL 4483437, at *7 (dismissing request for declaratory relief because a "declaratory judgment would be both inappropriate and duplicative"). Because Plaintiffs lack standing to seek declaratory relief and their claim is duplicative of their breach of contract claim, the Court dismisses Plaintiffs' declaratory judgment claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Progressive's motion to dismiss Plaintiffs' amended complaint [33]. The Court dismisses Plaintiffs' unfair practices ICFA claim and their claim for declaratory relief without prejudice. Plaintiffs may proceed with their ICFA deceptive practices claim only on the ground that Progressive failed to disclose material facts regarding its application of a PSA.

Dated: January 9, 2023

_____
SARA L. ELLIS
United States District Judge