**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NORMANDA HOLMES and SHERRY CITCHENS-WRIGHT, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 22 C 894 |
| | ) | Judge Sara L. Ellis |
| PROGRESSIVE UNIVERSAL INSURANCE COMPANY, an Ohio corporation, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

In September 2020, car accidents damaged Plaintiffs Normanda Holmes' and Sherry

Citchens-Wright's vehicles.  Both Plaintiffs filed claims with their insurer, Defendant

Progressive Universal Insurance Company ("Progressive"), which ultimately declared their

vehicles to be total losses.  Progressive thereafter purported to compensate Plaintiffs for the

actual cash value ("ACV") of their vehicles.  Plaintiffs, however, allege that Progressive

undervalued their vehicles by applying a significant downward adjustment to the base values of the

comparable vehicles.  In their second amended complaint, Plaintiffs assert, on behalf of

themselves and others similarly situated, claims for violation of the Illinois Consumer Fraud and

Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq*.; breach of

contract; and breach of the covenant of good faith and fair dealing.

Plaintiffs now move to certify the following class under Federal Rule of Civil Procedure

23(b)(3):

> All persons who made a first-party claim on a policy of insurance issued by Progressive Universal Insurance Company to an Illinois resident where the claim was submitted from February 18, 2012, through the date an order granting class certification is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

Doc. 155 at 1. Because Plaintiffs have not demonstrated that this proposed class satisfies Rule 23(b)(3)'s predominance requirement, the Court denies Plaintiffs' motion for class certification.[1]

## BACKGROUND

In September 2020, Plaintiffs sustained physical damage to their cars after being involved in accidents. At the time of these accidents, Plaintiffs each had an insurance policy (the "Policy") with Progressive agreeing to provide coverage for sudden, direct, and accidental loss to insured vehicles. The Policy limits Progressive's liability for loss to a covered vehicle to the lowest of the following amounts: (1) the ACV at the time of the loss, (2) the amount necessary to replace or repair the vehicle, or (3) the amount shown on the vehicle's declaration page, or auto insurance coverage summary. Progressive declared Plaintiffs' vehicles to be total losses (*i.e.*, repair of the vehicle would be impossible or uneconomical), and so purported to pay the ACV of the vehicles.

The Policy states that Progressive will determine ACV based on "the market value, age, and condition of the vehicle at the time the loss occurs." Doc. 156-3 at 21. It further states that Progressive "may use estimating, appraisal, or injury evaluation systems" "developed by [Progressive] or a third party" when determining the amount of damages or loss payable. *Id.* at 26. As contemplated by the Policy, Progressive relies on valuation reports prepared by third-party

---

[1] Progressive also filed a motion for leave to file supplemental authority to support its opposition to Plaintiffs' motion for class certification. The Court grants this motion but reminds Progressive that the Court's Case Procedures requires all movants to (1) notice motions for a date certain and (2) state with specificity what the parties did to comply with the meet and confer requirement. The Court's procedures are not mere technicalities, and future failures to comply may result in the Court summarily denying motions.

2

Mitchell International, Inc. ("Mitchell") to calculate the ACV of total-loss vehicles. Mitchell locates comparable vehicles sold or for sale in an insurance claimant's geographic area and then adjusts the prices for these comparable cars (*e.g.*, for differences in mileage, options, and equipment). For comparable vehicles that are listed but have not yet sold, Mitchell systematically applies a Projected Sold Adjustment ("PSA") that purports to "reflect consumer purchasing behavior (negotiating a different price than the listed [vehicle] price)." Doc. 156-6 at 9. This results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV of Plaintiffs' total-loss vehicles. Mitchell applied PSAs in the amounts of -$818.00, -$695.00, and -$712.00 to vehicles comparable to Holmes' total-loss vehicle, and -$549.00 and -$488.00 to vehicles comparable to Citchens-Wright's total-loss vehicle.

## LEGAL STANDARD

Class certification is appropriate where the proposed class meets "all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the conditions of Rule 23(b)." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, although not an explicit requirement of Rule 23, the party seeking certification must demonstrate that the class members are identifiable. *Oshana*, 472 F.3d at 513. The party seeking class certification bears the burden of proving every disputed prerequisite for class certification by a preponderance of the evidence. *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

3

The Court has broad discretion in determining whether it should certify a proposed class. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). To do so, the Court must engage in a "rigorous analysis," resolving material factual disputes where necessary. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation omitted); *Messner*, 669 F.3d at 811. At the same time, the Court "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits," *Messner*, 669 F.3d at 811, and it may consider merits questions only to the extent they are relevant to determining whether the proposed class has met Rule 23's prerequisites, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013).

## ANALYSIS

### I.      Scope of the Case

As a preliminary matter, the Court must clarify the scope of the case. The parties disagree as to which claims and theories remain following the Court's order on the motion to dismiss the first amended complaint and the subsequent second amended complaint. Progressive argues that Plaintiffs impermissibly seek to base their ICFA and breach of contract claims on previously dismissed and/or disclaimed theories, and the Court agrees.

With respect to the ICFA claims, the first amended complaint alleged that Progressive engaged in various forms of unfair and deceptive acts, including (1) failing to comply with Illinois Administrative Code Title 50, § 919.80(c) (the "Total-Loss Regulation"), (2) misrepresenting that they would pay ACV, (3) failing to disclose material facts regarding the application of a PSA, and (4) misrepresenting the PSA as a reflection of consumer purchasing behavior. The Court allowed Plaintiffs to "proceed with their ICFA deceptive practices claim only on the ground that Progressive failed to disclose material facts regarding its application of a PSA," dismissing the remaining ICFA claims without prejudice. Doc. 59 at 23.

4

As relevant here, the Court first dismissed the ICFA claim based on Progressive's alleged misrepresentations that the PSA reflected consumer purchasing behavior, finding that "Progressive made the statements in connection with settling Plaintiffs' claims—after they purchased their coverage." Doc. 59 at 12. As a result, "Plaintiffs [had] not sufficiently alleged that Progressive's misrepresentations caused their damage (*i.e.*, purchasing an insurance policy that they would not have otherwise purchased, or would have purchased for less money)." *Id.* The Court separately dismissed the ICFA claim based on the theory that Progressive failed to comply with the Total-Loss Regulation, explaining that, while Plaintiffs could potentially assert this claim, " [they] would need to adequately plead that Progressive violated the regulation." Doc. 59 at 13. They failed to do so, and instead "merely allege[d] in conclusory fashion that Progressive 'failed to comply with Illinois law' and quote[d] the law." *Id.* at 13–14. This did not meet even the more lenient notice-pleading requirements. *Id.*

The Court dismissed the ICFA claims without prejudice, meaning that Plaintiffs had the opportunity to remedy the deficiencies identified by the Court. They did not do so. Rather than repleading the ICFA claims with sufficient factual allegations to support the theory that Progressive acted unfairly or deceptively because it violated the Total-Loss Regulation, Plaintiffs *removed* the citations to the Total-Loss Regulation. And while Plaintiffs kept the conclusory allegation that Progressive failed to comply with Illinois law, this was insufficient for the same reasons discussed with respect to the first amended complaint. Moreover, Plaintiffs' second amended complaint did nothing to remedy the fatal lack of proximate causation with respect to the theory that Progressive misrepresented the PSA. To the contrary, Plaintiffs again *removed* the allegations supporting this theory from the second amended complaint. Because the second amended complaint suffers from the same pleading deficiencies as the first amended complaint,

5

Plaintiffs cannot certify a class based on these dismissed theories. *See Wilson v. City of Evanston*, No. 14 C 8347, 2017 WL 3730817, at *3 n.3, n.4 (N.D. Ill. Aug. 30, 2017) (holding that plaintiff's attempt to certify a class based on a previously-dismissed theory was "precluded by the Court's prior order granting Defendant's motion to dismiss in part" because the second amended complaint merely "repeat[ed] allegations that appear to do no more than restate their prior [dismissed] theory"); *Kress v. CCA of Tenn., LLC*, 272 F.R.D. 222, 226 n.2 (S.D. Ind. 2010), *aff'd*, 694 F.3d 890 (7th Cir. 2012) ("Because these claims [relating to grievance procedures] have been dismissed, the Court will not consider issues with grievance procedures in evaluating the Motion for Class Certification.").[2]

Turning to the breach of contract claims, the Court also concludes that Plaintiffs cannot proceed under the theory that Progressive breached the express terms of the Policy and/or the implied duty of good faith and fair dealing by violating the Total-Loss Regulation.[3] While the first amended complaint alleged in a conclusory fashion that Progressive failed to comply with the Total-Loss Regulation, Plaintiffs expressly disclaimed this theory when responding to the motion to dismiss. Specifically, Plaintiffs represented that their "breach of contract claims are independent from the Total-Loss Regulation and do not turn on whether it was violated." Doc. 44 at 7. They further confirmed that "nothing about" the factual allegations supporting these claims "turn[s] on or relates to whether Progressive also violated a state regulation." *Id.* Given these representations, the Court declined to address the parties' arguments regarding this theory

---

[2] While Plaintiffs assert that they "*now* articulate"—in their motion for class certification—"how Progressive's conduct violates the Total Loss Regulation," Doc. 157 at 22–23 (emphasis added), this "attempt to amend the complaint through the motion for class certification is inappropriate," *Cwiak v. Flint Ink Corp.*, 186 F.R.D. 494, 497 (N.D. Ill. 1999).

[3] As explained in the Court's opinion on the motion to dismiss, Plaintiffs' breach of implied duty of good faith and fair dealing is properly construed "as part of Plaintiffs' breach of contract claim." Doc. 59 at 20 n.6 (collecting cases).

6

when ruling on the motion to dismiss. Doc. 59 at 14 n.5 ("[T]he Court does not understand Plaintiffs' amended complaint to predicate their breach of contract claim on a violation of the Total-Loss Regulation."); *id.* at 20 ("[A]lthough Plaintiffs mention the Total-Loss Regulation in their amended complaint, they do not base their breach [of implied duty of good faith and fair dealing] claim on a violation of that regulation."). The second amended complaint only reinforced this understanding, as Plaintiffs again removed the paragraphs quoting the Total-Loss Regulation. And when briefing their first motion for class certification, Plaintiffs reiterated that they "are not relying on a regulatory violation" with respect to their breach of contract claims. Doc. 111 at 12.

Plaintiffs have now reversed course entirely, alleging that Progressive breached the express and implied terms of the Policy by violating the Total-Loss Regulation. While they defend this position by arguing that it is permissible to "evolve their legal theories based on discovery and legal precedent," Doc. 173 at 4, this falls flat considering their prior disclaimer. "As a general rule, district courts should not hold plaintiffs to their earlier legal theories *unless the changes unfairly harm the defendant or the case's development*—for example, by making it 'more costly or difficult' to defend the case, or by causing unreasonable delay." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017) (emphasis added). And the Seventh Circuit has confirmed that, where a plaintiff expressly disclaims a theory only to assert it later, allowing such a change would unfairly disadvantage the defendant and make the case more costly or difficult to defend. *Appleton v. City of Gary*, 781 F. App'x 501, 504 (7th Cir. 2019) ("[T]his is not a case in which [plaintiff] waited to raise a legal theory; she expressly disclaimed it, only to later raise it . . . allowing [plaintiff's] flip-flop would make defending the case 'more costly or difficult,' and unfairly disadvantage the City.").

7

Moreover, this is not a case in which Plaintiffs have solely changed their legal theory; the factual underpinnings of this claim have also changed in significant ways. Whereas Plaintiffs allege in the second amended complaint that Progressive "failed to pay Plaintiffs and each of the other [c]lass members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiffs and each of the other [c]lass members," Doc. 62 ¶ 90, they now argue that Progressive breached its Policy by utilizing a "statistically invalid" methodology, Doc. 157 at 14. Under this current theory, "[t]he breach lies in Progressive's . . . deliberate choice to use a non-compliant methodology, not in the dollar amount of each insured's claim." *Id.* at 15. In other words, "the predominant [factual] issue for the jury in this case is not whether Progressive correctly valued any individual car" (*i.e.*, the original factual theory underpinning this claim), "but whether its uniform PSA methodology was statistically valid as required by the Total-Loss Regulation." *Id.* at 16. As framed in the motion, this claim "would not merely be 'an alternative legal characterization' of the complaint's facts; it would be a new fact." *Chessie*, 867 F.3d at 861.[4]

The "[i]ntroduction of this new factual and legal theory at such a late stage of the case would have led inevitably to further discovery, delay, and expense." *Id.* The parties completed fact and expert discovery in 2023 and 2024, respectively, well before Plaintiffs gave any indication that they intended to pursue this theory. Progressive therefore had no reason to seek discovery with respect to this theory, and allowing Plaintiffs to revive this disclaimed theory at this stage of the case would either unfairly deprive Progressive of the opportunity to fully form

---

[4] Plaintiffs' own class certification briefing clearly highlights that Plaintiffs' factual theory, rather than just their legal theory, has changed significantly. In the first motion for class certification, Plaintiffs argued that *Drummond v. Progressive Specialty Ins. Co.*, 142 F.4th 149 (3d Cir. 2025), involved "identical facts" and "materially identical claims and evidence." Doc. 92 at 1, 22. Now, in the second motion for class certification, Plaintiffs argue that *Drummond* "is factually distinguishable." Doc. 157 at 18.

its defense or would require reopening discovery, resulting in additional costs and delays. Given the late stage of the case and Plaintiffs' prior disclaimer, the Court rejects Plaintiffs' attempt to effectuate such a significant change to these claims. *Id.* ("While a district judge may decide that justice calls for tolerance of [further delay and expense], the judge also has discretion to deny such a late change in the shape and scope of a civil case.").

For these reasons, Plaintiffs cannot seek certification based on the theories that Progressive's violation of the Total-Loss Regulation amounted to a breach of contract or unfair or deceptive conduct under the ICFA. Nor can they proceed on the theory that Progressive deceptively represented that the PSA reflected consumer purchasing behavior. And Plaintiffs do not seek certification on the previously-asserted breach theory, nor can they considering the Seventh Circuit's recent ruling in *Schroeder v. Progressive Paloverde Ins. Co.*, 146 F.4th 567, 577 (7th Cir. 2025) (holding that individualized questions predominate claims based on theory that "Progressive breached a duty under its standard-form Indiana auto insurance policy to pay each putative class member the actual cash value of [their] totaled car[s]"). The Court therefore analyzes whether Plaintiffs have met the requirements of Rule 23 only with respect to the ICFA theory that "Progressive failed to disclose material facts regarding its application of the PSA in its Policy and valuation reports." Doc. 157 at 23.

## II.    Class Certification

The Court focuses its Rule 23 analysis with commonality and predominance because these issues are dispositive. Under Rule 23(a)(2), a party seeking class certification must show commonality by identifying "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The key to commonality is 'not the raising of common 'questions' . . . but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of

9

the litigation.'" *Orr v. Shicker*, 953 F.3d 490, 498–99 (7th Cir. 2020) (quoting *Wal-Mart*, 564 U.S. at 350); *see also Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 550 (7th Cir. 2016) ("[A] prospective class must articulate at least one common question that will actually advance all of the class members' claims."). The predominance requirement, in turn, allows for certification only if the common questions of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement is similar to the commonality requirement but "far more demanding." *Messner*, 669 F.3d at 814 (citation omitted); *see also Pavone v. Meyerkord & Meyerkord, LLC*, 321 F.R.D. 314, 319 (N.D. Ill. 2017) (noting that commonality and predominance are "closely related" and "can 'overlap in ways that make them difficult to analyze separately'" (citation omitted)).

The Court begins its analysis "with the elements of the underlying cause of action." *Messner*, 669 F.3d at 815; *see also Phillips*, 828 F.3d at 552 ("A determination of commonality often requires a precise understanding of the nature of the plaintiffs' claims."). A plaintiff seeking relief under the ICFA for deceptive practices must establish: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 180 (2005) (citation omitted). In other words, "Plaintiffs must point to a materially deceptive representation or omission that proximately caused their injury." *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 148 (N.D. Ill. 2017). And at the class certification stage, they "need to establish that some common deceptive practice, as understood by consumers, occurred such that 'a significant aspect of a case . . . can be resolved for all members of a class in a single adjudication.'" *Williams v. State Farm Mut. Auto. Ins. Co.,* No.

10

22 C 1422, 2026 WL 879336, at *3 (N.D. Ill. Mar. 30, 2026) (quoting *Messner*, 669 F.3d at 815). Plaintiffs have failed to carry their burden here.

The Court begins by noting that Plaintiffs appear to have approached this motion as if the case were still at the pleading stage. While they vaguely assert that they have common evidence to satisfy the elements of their ICFA claim, they fail to provide this evidence or identify the evidence with any level of specificity. For example, Plaintiffs assert that, "as shown above, Plaintiffs have evidence to prove that Progressive's conduct was deceptive on a classwide basis." Doc. 157 at 23. Yet none of the evidence discussed in the motion relates to whether Progressive's omissions would likely deceive a reasonable consumer. Nor do Plaintiffs present any evidence that a reasonable consumer would find the PSA material. And although Plaintiffs assert that the "deception does not vary by person, policy, or transaction" and "the same uniform conduct . . . affects all insureds in the same way," Doc. 157 at 24, they again provide no evidence or explanation to support these bare assertions. Instead of presenting any common evidence supporting this claim, Plaintiffs repeatedly fall back on the fact that the Court concluded at the motion to dismiss stage that they had "plausibly alleged" a deceptive act. *Id.* at 23 ("The Court has already concluded that Plaintiffs adequately state this claim."). But Rule 23 "'does not set forth a mere pleading standard'; rather, the party seeking class certification must demonstrate the requirements 'through evidentiary proof.'" *Clark v. Bumbo Int'l Tr.,* No. 15 C 2725, 2017 WL 3704825, at *2 (N.D. Ill. Aug. 28, 2017) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 (2013)). The reliance "on bare-bones assertions by counsel instead of evidentiary proof" is, in and of itself, reason enough to find that Plaintiffs have not met their burden under Rule 23(b)(3). *Id.* at *8; *see also Parko v. Shell Oil Co.*, 739 F.3d 1083, 1086 (7th Cir. 2014) (holding that predominance is not a "pleading requirement," meaning that it is not enough "that the plaintiffs

11

*intend* to rely on common evidence" to prove their claims); *Hostetler v. Johnson Controls, Inc.*, No. 3:15-CV-226, 2018 WL 3868848, at *16 (N.D. Ind. Aug. 15, 2018) ("Rule 23's requirements are not a mere pleading standard; a party does not meet those requirements by offering its assurance that it will be able to offer common proof.").

Even setting aside these evidentiary issues, Plaintiffs still have not met their burden of establishing that common issues predominate.  Plaintiffs argue that whether Progressive's conduct would mislead a reasonable consumer is an objective question capable of class-wide proof.  While the Court agrees that this is a common question, that alone is not sufficient to establish predominance.  *See Strow v. B&G Foods, Inc.*, 348 F.R.D. 446, 451 (N.D. Ill. 2025) ("Plaintiff submits that the predominance requirement is met here because 'the single, central, common issue of liability is whether Butter-No Stick Spray was deceptive and misleading.' However, this is insufficient to meet plaintiff's burden of showing by a preponderance of the evidence that questions common to the class predominate over individual questions." (citation omitted)).  Progressive cannot be liable for failing to disclose material information in a vacuum; it can only be liable to the extent that those omissions proximately caused actual damage to Plaintiffs and the putative class members.  *Oshana*, 472 F.3d at 514–15 ("[A] private cause of action under the ICFA requires a showing of proximate causation . . . .There is no per se violation that automatically makes Coke liable to Oshana and the members of the proposed class for private damages.").

For this reason, to prevail on the ICFA claim, "each class member would have to prove that they were deceived by" Progressive's failure to disclose the PSA "and that they suffered damages as a result." *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 584 (N.D. Ill. 2014) (quoting *Lipton v. Chattem,* 289 F.R.D. 456, 462 (N.D. Ill. 2013)).  And doing so will

require extensive individualized analyses. There are many reasons why a class member may have purchased Progressive insurance or paid the amount they did, and it is unclear whether and to what extent Progressive's failure to disclose the PSA impacted these decisions. Therefore, to determine whether a particular class member suffered actual damage because of Progressive's omissions, the Court would need to inquire into the circumstances surrounding each class member's purchase of and payment for Progressive insurance coverage. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir. 2010) ("[A]bsent proof as to why a particular plaintiff purchased a particular brand of gasoline, Siegel cannot establish that the defendants' conduct caused him or her to make that purchase.").

The need for individualized assessments becomes even more apparent upon review of the named Plaintiffs' own deposition testimony. Citchens-Wright, for example, testified that she originally purchased Progressive insurance because she moved to Illinois and her prior insurance company no longer covered her. Doc. 99-4 at 72:7–14. And despite now claiming that she would not have purchased or would not have paid what she did had Progressive disclosed its use of the PSA, Citchens-Wright continued paying for Progressive insurance after she received the valuation report disclosing the PSA. Doc. 99-4 at 69:13–70:1, 88:4–17. It was only after her premiums went up that she switched to a different insurance company to get a lower rate. *Id.* at 73:8–15. Holmes, on the other hand, purchased Progressive insurance because "[t]he rates were very good at the time." Doc. 99-5 at 26:16–17. She testified that she had no concerns about the PSA even after receiving her valuation report, and she went so far as to testify that she does not disagree with Mitchell's use of the PSA. Doc. 99-5 at 151:17–24, 153:19–154:3. To the contrary, she testified that she believes "it's okay for Mitchell to look at the list price of a vehicle and make an adjustment for the downward negotiation." *Id*. The above testimony undermines

13

Plaintiffs' assertion that they personally would not have purchased or would not have paid as much for Progressive insurance coverage had Progressive originally disclosed its application of the PSA, highlighting the need for individualized inquiries.

Plaintiffs' arguments to the contrary do not move the needle. Instead of presenting evidence as to the materiality of the PSA or the degree to which Progressive's omissions may have impacted class members' decisions to purchase Progressive insurance, they simply argue that "individualized . . . causation issues do not defeat predominance" in cases where "the deception inquiry is objective." Doc. 157 at 23. This is unpersuasive and grossly oversimplifies the law. Although Plaintiffs are correct that some courts have inferred proximate causation on a class-wide basis, they did so not as a matter of course but because the facts of the case warranted it. Specifically, the cases Plaintiffs cite hold that "a court may infer reliance or proximate causation on a class-wide basis" if (1) "potential members have been subject to standardized misrepresentations" or omissions and (2) there is "a 'clear and logical connection' between the misrepresentation and the class members' conduct that suggests that no rational class member would have acted as they did absent the misrepresentation.'" *Mullen v. GLV, Inc.*, 330 F.R.D. 155, 166 (N.D. Ill. 2019) (quoting *Rowe v. Bankers Life & Cas. Co.*, No. 09-cv-491, 2012 WL 1068754, at *11 (N.D. Ill. Mar. 29, 2012)).

In *Mullen*, for example, the plaintiffs alleged that defendants "committed fraud by failing to disclose and affirmatively concealing that [a volleyball coach] raped and sexually abused at least six underage women in the 1980s." *Id.* at 160. Because "no reasonable parent would knowingly send their child into the care of an adult who admitted to a pattern of rape and sexual abuse against minors," the court concluded that "an inference of class-wide reliance" was appropriate. *Id.* at 166–67. Similarly, in *Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir.

14

2018), the plaintiffs alleged that defendant sold "functionally worthless" software while deceptively representing that the same software could "fix common problems affecting computer speed and performance," *id.* at 1021. The district court concluded—and the Seventh Circuit affirmed—that deception and causation could be "addressed through a common proceeding, because each of these questions [was] intricately related to [defendant's] representations about the software and the function of the software." *Beaton v. SpeedyPC Software*, No. 13-CV-08389, 2017 WL 4740628, at *8 (N.D. Ill. Oct. 19, 2017), *aff'd*, 907 F.3d 1018 (7th Cir. 2018). Clearly, no rational class member would have purchased the software had they known it was functionally worthless and could not deliver on its promise to fix their computer issues.

The same is not true here. Consumers may choose to purchase Progressive insurance for a multitude of reasons beyond the methodology Progressive uses to value totaled cars. Plaintiffs do not argue, and the Court sees no reason to presume, that no rational class member would have purchased or paid as much as they did for Progressive insurance had they known of the PSA. In fact, Holmes testified that she believed use of the PSA was appropriate and thus, most likely, would not have factored into her decision to purchase insurance from Progressive. This is therefore not a case in which the Court will infer proximate causation or reliance on a class-wide basis.

For these reasons, the Court finds that Plaintiffs have not met their burden of demonstrating that common issues predominate and denies the motion for class certification. *Williams*, 192 F.R.D. at 585 ("Denial of class certification is appropriate where individual issues of causation predominate an ICFA claim."); *Strow*, 348 F.R.D. at 452 ("[P]laintiff has not shown that a principal element of his ICFA claims—whether the putative class members suffered damages proximately caused by defendant's misrepresentations—is susceptible to class

15

resolution. Accordingly, plaintiff has failed to show the predominance necessary for certification under Rule 23(b)(3).").[5]

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' motion for class certification [155]. The Court grants Progressive's motion for leave to file supplemental authority in support of its opposition to the motion for class certification [181].

Dated: April 15, 2026

                                                  SARA L. ELLIS
United States District Judge

---

[5] Because commonality and predominance are dispositive, the Court does not address the parties' remaining arguments at this time.

16